IN RE the COMMITMENT OF Michael ALGER:

STATE of Wisconsin, Petitioner-Respondent,

v.

Michael ALGER, Respondent-Appellant.†

Court of Appeals

*No. 2013AP225 Submitted on briefs October 15, 2013.*
*—Decided November 19, 2013.*

2013 WI App 148

(Also reported in 841 N.W.2d 329.)

† Petition for Review granted May 23, 2014.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Nancy A. Noet*, assistant attorney general.

Before Hoover, P.J., Mangerson and Stark, JJ.

148

¶ 1. STARK, J. This case requires us to determine whether WIS. STAT. § 907.02(1),[1] which adopted the reliability standard for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), applies to Michael Alger's petitions for discharge from a WIS. STAT. ch. 980 commitment. We conclude that it does not. Section 907.02(1) applies to actions and special proceedings commenced on or after February 1, 2011. Although Alger's discharge petitions were filed after that date, neither petition commenced a new action. Instead, the discharge proceedings were a continuation of the underlying commitment proceedings, which were commenced in 2004 when the original petition for commitment was filed. Consequently, § 907.02(1) does not apply to Alger's discharge petitions. We also reject Alger's argument that § 907.02(1), if inapplicable to his discharge petitions, violates his right to equal protection. We therefore affirm the order denying the petitions.

## BACKGROUND

¶ 2. On May 25, 2004, the State filed a WIS. STAT. ch. 980 commitment petition, seeking Alger's commitment as a sexually violent person.[2] Following a two-day trial, a jury found that Alger was a sexually violent

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] WISCONSIN STAT. ch. 980 provides for the civil commitment of a sexually violent person "for control, care and treatment until such time as the person is no longer a sexually violent person." WIS. STAT. § 980.06. As relevant here, a sexually violent person is a person who: (1) "has been convicted of a sexually violent offense[;]" and (2) "is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence." WIS. STAT. § 980.01(7).

person. The circuit court ordered him placed in the custody of the Department of Health and Family Services[3] and committed to a secure mental health facility. Alger filed petitions for discharge from his commitment in 2006 and 2007, which the circuit court denied.

¶ 3. In January 2011, the legislature amended Wisconsin's expert witness statute, WIS. STAT. § 907.02, to adopt the federal *Daubert* standard for the admissibility of expert testimony. *See* 2011 Wis. Act 2, § 34m. Before the amendment, testimony of a witness "qualified as an expert by knowledge, skill, experience, training, or education" was admissible if "scientific, technical, or other specialized knowledge" would "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" WIS. STAT. § 907.02 (2009–10). Under the revised version of the statute, the circuit court must also conclude that the expert's testimony "is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case." WIS. STAT. § 907.02(1). Pursuant to 2011 Wis. Act 2, § 45(5), this new reliability standard first applies "to actions or special proceedings that are commenced on the effective date of this subsection"—that is, February 1, 2011.[4]

¶ 4. On April 21, 2011, Alger petitioned for discharge from his WIS. STAT. ch. 980 commitment. The State conceded that Alger's petition stated sufficient

---

[3] The Department of Health and Family Services is now known as the Department of Health Services. *See* 2007 Wis. Act 20, § 9121(6)(a)-(b).

[4] Unless otherwise specified, the effective date of an act is the day after its date of publication. WIS. STAT. § 991.11. 2011 Wis. Act 2 was published on January 31, 2011, making its effective date February 1, 2011.

150

facts to warrant a full discharge hearing. Alger then filed a motion in limine seeking to preclude the State from introducing certain expert testimony related to Alger's risk of reoffending. Alger asserted the challenged testimony would not satisfy the new reliability standard set forth in Wis. Stat. § 907.02(1).

¶ 5. In response, the State argued the new standard did not apply to Alger's discharge petition because the petition did not constitute an action or special proceeding commenced on or after February 1, 2011. The State reasoned the discharge petition was merely a continuation of the underlying commitment proceedings, which had been commenced in 2004. The State also argued that, even if the new reliability standard from Wis. Stat. § 907.02(1) did apply to Alger's discharge petition, the challenged testimony met that standard.

¶ 6. Alger filed another discharge petition on November 23, 2011. The circuit court ordered the two petitions merged for trial. Alger also filed a supplemental motion in limine, contending that, if Wis. Stat. § 907.02(1) did not apply to his discharge petitions, it violated his right to equal protection. In response, the State asserted that the legislature had a rational basis for making § 907.02(1) inapplicable to actions commenced before February 1, 2011.

¶ 7. The circuit court denied Alger's original and supplemental motions in limine. The court reasoned that a petition for discharge from a Wis. Stat. ch. 980 commitment "does not create a new civil action," and, as a result, Alger's discharge proceedings did not constitute an action commenced on or after February 1, 2011. The court also held that Wis. Stat. § 907.02(1) did not violate Alger's right to equal protection.

¶ 8. The case was subsequently tried to a jury. At trial, the State introduced the type of expert testimony Alger's motions in limine had sought to preclude. The jury found that Alger was still a sexually violent person, and the circuit court entered an order denying his discharge petitions. Alger now appeals from that order.

## DISCUSSION

### I. Applicability of WIS. STAT. § 907.02(1) to Alger's discharge petitions

¶ 9. Alger first argues the circuit court erred by determining that WIS. STAT. § 907.02(1) does not apply to his discharge petitions. Interpretation of a statute and its application to undisputed facts are questions of law that we review independently. *McNeil v. Hansen*, 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶ 10. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation begins with the language of the statute." *Id.*, ¶ 45 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. If the statute's

meaning is plain, we ordinarily stop the inquiry without resorting to extrinsic sources such as legislative history. *Id.*

¶ 11. 2011 Wis. Act 2, § 45(5), provides that WIS. STAT. § 907.02(1) "first appl[ies] to actions or special proceedings that are commenced" on February 1, 2011. The State argues convincingly that a discharge petition under WIS. STAT. ch. 980 does not constitute a "special proceeding," and Alger does not dispute this assertion. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not refuted are deemed conceded). The operative question is therefore whether Alger's discharge petitions, which were indisputably filed after February 1, 2011, "commenced" an "action." We conclude that they did not.

¶ 12. The dictionary definition of "action" applicable in this context is "a legal process; a lawsuit[.]" NEW OXFORD AMERICAN DICTIONARY 15 (2001); *see also State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711 (Ct. App. 1993) ("A common and approved meaning for a word . . . may be ascertained by reference to a recognized dictionary."). The applicable definition of "commence" is "begin; start[.]" NEW OXFORD AMERICAN DICTIONARY 343 (2001). Accordingly, WIS. STAT. § 907.02(1) first applies to legal processes or lawsuits begun or started on February 1, 2011. Alger's discharge petitions do not meet this definition. The structure and language of WIS. STAT. ch. 980 demonstrate that discharge petitions are part of the committing court's continuing administrative authority over the existing lawsuit that began when the original commitment petition was filed. Filing a discharge petition is merely another step in that existing lawsuit—it does not begin a new lawsuit or legal process.

¶ 13. Multiple sections of Wis. Stat. ch. 980 illus-trate that the committing court maintains continuing administrative authority over a ch. 980 commitment after the commitment order is entered. For instance, Wis. Stat. § 980.07(1) requires the Department of Health Services to appoint an examiner to reexamine the committed person's mental condition "within 12 months after the date of the initial commitment . . . and again thereafter at least once each 12 months[.]" The department must submit an annual report in conjunc-tion with each annual reexamination "to the court that committed the person[.]" Wis. Stat. § 980.07(6). The court is then responsible for providing a copy of the report to the committed person's attorney. *Id.* Further, notwithstanding the annual reexamination require-ment, "the court that committed a person" has author-ity to order a reexamination "at any time during the period in which the person is subject to the commit-ment order." Wis. Stat. § 980.07(3). In addition, al-though the annual reexamination requirement does not apply while the committed person is incarcerated for a new criminal charge or conviction, the court "may order a reexamination of the person" during that time "if the court finds reexamination to be necessary." Wis. Stat. § 980.07(6m).

¶ 14. The statutes pertaining to supervised re-lease from a Wis. Stat. ch. 980 commitment also dem-onstrate that postcommitment proceedings fall under the continuing authority of the committing court. A petition for supervised release must be filed with "the committing court[.]" Wis. Stat. § 980.08(1). If the com-mitted person is unrepresented, it is the court's respon-sibility to serve a copy of the person's petition on either the district attorney or the department of justice. Wis. Stat. § 980.08(2). The court must also refer the matter

154

"to the authority for indigency determinations under s. 977.07(1) and appointment of counsel under s. 977.05(4)(j)." Wis. Stat. § 980.08(2). Within twenty days of receiving a petition for supervised release, the court must appoint an expert to examine the committed person. Wis. Stat. § 980.08(3).

¶ 15. "The court, without a jury" must hear a petition for supervised release "within 30 days after the report of the court-appointed examiner is filed with the court[.]" Wis. Stat. § 980.08(4)(a). To authorize supervised release, the court must find that five criteria listed in the statute are met. Wis. Stat. § 980.08(4)(cg). If the court finds that the statutory criteria are met, it must identify a county of intended placement for the committed person and direct that county to prepare a report identifying prospective residential options for community placement. Wis. Stat. § 980.08(4)(cm), (e). The court must then direct the department to prepare a "supervised release plan for the person." Wis. Stat. § 980.08(4)(f). The court must review the supervised release plan to determine whether it "adequately meet[s] the treatment needs of the individual and the safety needs of the community[.]" Wis. Stat. § 980.08(4)(g). If so, the court must approve the plan and determine that supervised release is appropriate. *Id.* If not, the court "shall determine that supervised release is not appropriate or direct the preparation of another supervised release plan to be considered by the court[.]" *Id.* If the department subsequently determines a committed person's supervised release should be revoked, it must file a petition to revoke the order for supervised release "with the committing court[.]" Wis. Stat. § 980.08(7)(c).

¶ 16. Like a petition for supervised release, a petition for discharge from a Wis. Stat. ch. 980 commit-

ment must also be filed with "the committing court[.]" Wis. Stat. § 980.09(1). As the record in this case shows, the discharge petition is filed under the same case number as the original commitment petition. After the discharge petition is filed, the court reviews it to determine whether it "alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person." *Id.* The court may hold a hearing to help it make this determination, and it must consider "any current or past [annual reexamination] reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state." Wis. Stat. § 980.09(2).

¶ 17. If the court determines a discharge petition contains facts from which a court or jury could conclude the committed person no longer meets the criteria for commitment, it must hold a hearing within ninety days, at which the State must prove by clear and convincing evidence that the person continues to meet the criteria for commitment. Wis. Stat. § 980.09(3). If the State fails to meet its burden, the court must discharge the person from his or her commitment. Wis. Stat. § 980.09(4). If the State meets its burden, the court may determine "whether to modify the petitioner's existing commitment order by authorizing supervised release." *Id.*

¶ 18. Wisconsin Stat. § 980.101 also illustrates the committing court's continuing authority over postcommitment proceedings. Under that statute, if a judgment convicting the committed person of a sexually violent offense is reversed, set aside, or vacated, the person may bring a motion for postcommitment relief "in the

court that committed the person." Wis. Stat. § 980.101(2). The court must then determine whether there are "other judgments relating to a sexually violent offense committed by the person[.]" Wis. Stat. § 980.101(2)(a)-(b). If there are no other judgments, the court must vacate the commitment order. Wis. Stat. § 980.101(2)(a). If there are other judgments, the court must determine "whether to grant the person a new trial . . . because the reversal, setting aside, or vacating of the judgment for the sexually violent offense would probably change the result of the trial." Wis. Stat. § 980.101(2)(b).

¶ 19. As these statutes demonstrate, after a commitment order is entered, the committing court retains continuing administrative authority over the commitment. We therefore conclude that a petition for discharge does not start a new lawsuit or legal process distinct from the original commitment. Instead, a discharge petition is merely a continuation of the existing lawsuit that began when the petition for commitment was filed. As a result, Wis. Stat. § 907.02(1) does not apply to Alger's discharge petitions because, although the petitions were filed after February 1, 2011, the original commitment petition was not.

¶ 20. Alger argues this holding will produce absurd results. He observes that, under our rationale, "if Alger were still committed pursuant to the original commitment order when he reached his eightieth birthday in 2040, the amended version of [Wis. Stat.] § 907.02(1) *still* would not govern the proceedings conducted on any discharge petition he filed, even though that amendment would have been enacted 29 years earlier." Alger contends this result is absurd because, "[a]fter having apparently concluded that the prior standard needed to be jettisoned because it too often

allowed unreliable evidence to be admitted," the legislature could not have "intended that standard to remain applicable to some proceedings conducted years or even decades into the future[.]"

¶ 21. We do not agree with Alger that it is absurd to continue applying the old admissibility standard for expert testimony in actions commenced before the new standard went into effect. Alger's argument is premised on the idea that the legislature "could not have envisioned that unreliable expert testimony would continue to be admitted at proceedings conducted decades after [Wis. Stat. § 907.02] was revised." However, Alger does not cite any legislative history or other extrinsic evidence relevant to what the legislature did or did not intend.

¶ 22. Further, Alger seems to assume that the old standard was so insubstantial that any and all expert testimony was admissible. That is not the case. Before 2011 Wis. Act 2 went into effect, the circuit court had to make three findings to admit expert testimony: (1) that the evidence was relevant; (2) that the witness was qualified as an expert by knowledge, skill, experience, training, or education; and (3) that the evidence would assist the trier of fact to determine a fact in issue. *See* Wis. Stat. § 907.02 (2009–10); *Ricco v. Riva*, 2003 WI App 182, ¶ 20, 266 Wis. 2d 696, 669 N.W.2d 193. The new standard expands the circuit court's gatekeeping function to include questions regarding the reliability of the witness's methods. *See* Wis. Stat. § 907.02(1). However, that the legislature chose to enact a new standard for actions commenced on or after February 1, 2011, does not necessarily mean the legislature determined the old standard was so deficient it should be abandoned completely. We see nothing inherently absurd in continuing to apply the old standard to actions

commenced before February 1, 2011—even actions that continue for significant periods of time after that date.

## II. Whether Wis. Stat. § 907.02(1) violates Alger's right to equal protection

■■■

¶ 23. Alger next argues that, if the new reliability standard in Wis. Stat. § 907.02(1) does not apply to his discharge petitions, the statute violates his right to equal protection. The constitutionality of a statute is a question of law that we review independently. *State v. Smith*, 2010 WI 16, ¶ 8, 323 Wis. 2d 377, 780 N.W.2d 90. A statute is presumed constitutional. *Id.* The party challenging the statute bears the "heavy burden" of proving that it is " 'unconstitutional beyond a reasonable doubt.' " *Id.* (quoting *State v. Cole*, 2003 WI 112, ¶ 11, 264 Wis. 2d 520, 665 N.W.2d 328).

■■■

¶ 24. Both the United States Constitution and the Wisconsin Constitution guarantee equal protection of the laws. *See* U.S. Const. amend. XIV, § 1; Wis. Const. art. I, § 1.[5] The equal protection clause "is designed to assure that those who are similarly situated will be treated similarly." *Treiber v. Knoll*, 135 Wis. 2d 58, 68, 398 N.W.2d 756 (1987). However, the mere fact that a statutory classification results in some inequity does not provide sufficient grounds for invalidating a legislative enactment. *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989). Instead, equal protection requires that the legislature have "reasonable and prac-

---

[5] "We apply the same interpretation to the equal protection provisions of both the Wisconsin Constitution and the federal constitution." *Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 55 n.14, 237 Wis. 2d 99, 613 N.W.2d 849.

159

tical grounds for the classifications that it draws." *State v. Quintana*, 2008 WI 33, ¶ 79, 308 Wis. 2d 615, 748 N.W.2d 447.

¶ 25. The first step in an equal protection analysis is to determine the level of judicial scrutiny required. *State v. Smet*, 2005 WI App 263, ¶ 21, 288 Wis. 2d 525, 709 N.W.2d 474. Here, because Alger does not assert that Wis. Stat. § 907.02(1) restricts a fundamental right or discriminates against a suspect class, we review the statute using the deferential rational basis standard. *See Smith*, 323 Wis. 2d 377, ¶ 12. Thus, we will uphold the statute unless it is " 'patently arbitrary' and bears no rational relationship to a legitimate government interest." *McManus*, 152 Wis. 2d at 131 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 683 (1973)). When applying this test, we are not limited by the legislature's actual reasons for passing the statute. *See Heller v. Doe*, 509 U.S. 312, 320 (1993). Rather, we must determine whether any reasonably conceivable state of facts could provide a rational basis for the legislature's decision. *Id.*

¶ 26. The United States Supreme Court has held that "the 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911). The Court has recognized that, in determining when a new statute should take effect, a state "obviously ha[s] to draw the line at some point[.]" *Dobbert v. Florida*, 432 U.S. 282, 301 (1977). Under the rational basis test, courts routinely uphold legislative decisions about where to draw the line between old and new laws. *See, e.g., Grigsby v. Barnhart*, 294 F.3d 1215, 1220 (10th Cir. 2002) (classification based on date of social security benefits adjudication did not violate

160

equal protection because " 'it is not constitutionally impermissible for Congress to have drawn lines between groups of [recipients] for the purpose of phasing out those benefits' " (quoted source omitted)); *Evans v. Thompson*, 881 F.2d 117, 122 (4th Cir. 1989) (statutory amendment establishing new procedures for resentencing in cases where a prior death sentence was vacated was rational and therefore constitutional); *Alikhani v. Fasano*, 70 F. Supp. 2d 1124, 1135 (S.D. Cal. 1999) (immigration detainee's equal protection rights were not violated by application of a new statute because Congress's decision to apply the statute prospectively was not arbitrary or irrational); *Montgomery Ward & Co. v. DOR*, 142 Wis. 2d 772, 781–82, 419 N.W.2d 348 (Ct. App. 1987) (statutory change that increased the interest penalty for certain tax deficiencies from nine percent to twelve percent depending on the date the DOR made its deficiency determination did not violate equal protection).

¶ 27. The legislature's decision to make WIS. STAT. § 902.07(1) applicable only to actions commenced on or after February 1, 2011, survives rational basis review. As Alger acknowledges, short of making § 902.07(1) fully retroactive, the legislature "had to choose *some* date for the enactment to take effect." Alger further concedes:

> It was arguably rational for the legislature to have chosen not to make the revision applicable to actions that were *pending* on the legislation's effective date. The legislature could well have concluded that "midstream" changes to the procedures and standards for admitting expert testimony could wreak havoc on pending litigation. Cases which were on appeal, or in which trials were already underway, could have already had testimony admitted under the more lenient version of the statute. Litigants in cases that had not yet gone to

trial might have nonetheless retained and prepared experts and developed their trial strategies based on the pre-*Daubert* standard. Thus, the state arguably had a legitimate interest in preventing the revised statute from applying to *pending* cases.

This concession is fatal to Alger's equal protection argument because we have already determined that Alger's case *was* pending on the new statute's effective date. We therefore reject Alger's claim that the statute violates his right to equal protection.

*By the Court.*—Order affirmed.