In re the COMMITMENT OF Ronald KNIPFER:
STATE of Wisconsin, Petitioner-Respondent,

v.

Ronald KNIPFER, Respondent-Appellant.†

Court of Appeals

No. 2013AP578. *Submitted on briefs November 15, 2013.*
*—Decided December 27, 2013.*

2014 WI App 9

(Also reported in 842 N.W.2d 526.)

† Petition for Review granted May 23, 2014.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Nancy A. Noet*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Lundsten, Sherman and Kloppenburg, JJ.

¶ 1. LUNDSTEN, J. Ronald Knipfer appeals the circuit court's order denying his May 2012 petition for discharge from his commitment under Wis. Stat. ch. 980.[1] Knipfer argues that, as a matter of statutory interpretation, the *Daubert*[2] standard that the legislature adopted in Wis. Stat. § 907.02(1) in 2011 applies to any petition for discharge filed on or after the statute's effective date. We rejected an identical argument in *State v. Alger*, 2013 WI App 148, 352 Wis. 2d 145, 841 N.W.2d 329, and we apply *Alger* here to reject Knipfer's argument. Knipfer, however, makes related constitutional arguments that were not presented in *Alger*. Knipfer presents a due process argument not addressed in *Alger* and a somewhat different equal protection argument than the one we rejected in that case. We reject these constitutional challenges, and affirm.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

### Background

¶ 2.  The State filed its petition to commit Knipfer under Wis. Stat. ch. 980 in 2002, and Knipfer was committed in 2003. In May 2012, Knipfer filed a petition for discharge from his commitment. The circuit court concluded that the pre-*Daubert* version of Wis. Stat. § 907.02(1) applied to Knipfer's petition. The circuit court also rejected Knipfer's constitutional challenges.

### Discussion

¶ 3.  In 2011, the legislature amended Wis. Stat. § 907.02(1) to adopt the *Daubert* standard for expert testimony. *See Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 3; *see also* 2011 Wis. Act 2, § 34m. The statute now reads as follows, with the *Daubert* language italicized:[3]

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, *if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.*

Section 907.02(1) (emphasis added).

¶ 4.  The *Daubert* standard under the amended version of Wis. Stat. § 907.02(1) first applies to "actions or special proceedings that are commenced" on the effective date of the statute, February 1, 2011. *See* 2011

---

[3] The language in the statute does not appear verbatim in *Daubert*, but it is undisputed that the amended version of the statute is based on *Daubert*. The statutory language is similar to language in the corresponding federal rule. *See* Fed. R. Evid. 702.

Wis. Act 2, § 45(5); *Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 3 & n.4.

■

¶ 5.   Knipfer argues that the *Daubert* standard in the amended version of Wis. Stat. § 907.02(1) applies to any petition for discharge filed on or after the statute's effective date. As we explained in *Alger*, the "operative question is . . . whether [the discharge petition] . . . 'commenced' an 'action.' " *Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 11. We concluded in *Alger* that a petition for discharge does not commence an action. Rather, we explained, what matters for purposes of the amended statute's applicability is the timing of the State's original petition for commitment:

> We . . . conclude that a petition for discharge does not start a new lawsuit or legal process distinct from the original commitment. Instead, a discharge petition is merely a continuation of the existing lawsuit that began when the petition for commitment was filed. As a result, Wis. Stat. § 907.02(1) does not apply to Alger's discharge petitions because, although the petitions were filed after February 1, 2011, the original commitment petition was not.

*Id.*, ¶ 19; *see also id.*, ¶ 11.

¶ 6.   Because the State commenced its commitment action against Knipfer in 2002, and Knipfer petitioned for discharge in 2012, *Alger* is controlling. Applying *Alger*, we must reject Knipfer's argument that the *Daubert* standard in the amended version of Wis. Stat. § 907.02(1) applies to his discharge proceeding.

¶ 7.   We turn to Knipfer's constitutional arguments. Knipfer argues that, if the amended version of Wis. Stat. § 907.02(1) does not apply to him, then the statute violates his rights to equal protection and due process.

¶ 8.    We must presume the statute constitutional, and Knipfer has the burden to show it is unconstitutional beyond a reasonable doubt. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). We begin with Knipfer's equal protection argument, and then address his due process argument.

¶ 9.    As discussed further below, the difference between the equal protection argument in *Alger* and the one here relates to the required level of scrutiny. We applied rational basis review in *Alger* because, we explained, the *Alger* petitioner did not argue that "Wis. Stat. § 907.02(1) restricts a fundamental right or discriminates against a suspect class." *See Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 25. In contrast, Knipfer contends that strict scrutiny review applies because a substantial liberty interest is at stake. With this difference in mind, we proceed to address Knipfer's equal protection argument.

¶ 10.    We apply strict scrutiny "if the legislative classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *State v. Smet*, 2005 WI App 263, ¶ 21, 288 Wis. 2d 525, 709 N.W.2d 474. If it does not, then we generally ask only whether the classification has some rational basis. *See id.*

¶ 11.    As already indicated, the petitioner in *Alger* also challenged Wis. Stat. § 907.02(1) on equal protection grounds. *See Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 23. Here, as in *Alger*, the equal protection challenge relates to the application of the *Daubert* standard to one class of Wis. Stat. ch. 980 discharge petitioners but not to another. *See id.*, ¶¶ 26–27.

¶ 12. As noted, we applied rational basis review in *Alger* because the petitioner there did not argue that strict scrutiny applied. *See id.*, ¶ 25. Knipfer effectively argues that this is an incorrect starting point. Knipfer contends that strict scrutiny applies because petitioners like him have a substantial liberty interest at stake. Knipfer correctly points out that courts have sometimes applied strict scrutiny in the WIS. STAT. ch. 980 context, albeit without deciding whether strict scrutiny is required. *See State v. West*, 2011 WI 83, ¶ 91, 336 Wis. 2d 578, 800 N.W.2d 929 ("[T]his court has applied, without deciding, strict scrutiny in ch. 980 equal protection challenges."); *State v. Post*, 197 Wis. 2d 279, 321, 541 N.W.2d 115 (1995); *see also State v. Williams*, 2001 WI App 263, ¶ 11, 249 Wis. 2d 1, 637 N.W.2d 791 ("We, like *Post*, will use the 'strict scrutiny' standard without deciding that its application is required.").

¶ 13. The State argues that rational basis review applies because WIS. STAT. § 907.02(1) does not interfere with a fundamental right. The State asserts that the statute is an evidentiary rule that is generally applicable. The State correctly points out that courts sometimes apply rational basis review even in the criminal context. *See State v. Lynch*, 2006 WI App 231, ¶ 14, 297 Wis. 2d 51, 724 N.W.2d 656 (citing several cases showing that "[t]he supreme court and this court have consistently applied the rational basis standard when deciding equal protection challenges to statutes involving differences in criminal penalties").

¶ 14. Knipfer does not reply to the State's points, and his limited analysis does not persuade us that we should apply strict scrutiny. While Knipfer plainly has an underlying liberty interest in the outcome of any discharge proceeding, we fail to see how the application or non-application of an evidentiary rule like *Daubert*

"impermissibly interferes with the exercise of a fundamental right" so as to require strict scrutiny. *See Smet*, 288 Wis. 2d 525, ¶ 21.

¶ 15.   A recent supreme court case, *Milwaukee County v. Mary F.-R.*, 2013 WI 92, 351 Wis. 2d 273, 839 N.W.2d 581, supports our conclusion that strict scrutiny is not required here. The pertinent issue in *Mary F.-R.* was whether the legislature violated the equal protection clause by providing for six-person, non-unanimous juries under Wis. Stat. ch. 51 while twelve-person, unanimous juries are required under Wis. Stat. ch. 980. *Id.*, ¶ 1. The supreme court applied rational basis review, rejecting an argument that the underlying liberty interest required strict scrutiny of the different jury procedures:

> In evaluating prior challenges based on the differences found in Chapter 51 and Chapter 980, this court has generally refrained from deciding which level of scrutiny should apply. *Post*, 197 Wis. 2d at 321. However, we agree with Milwaukee County that rational basis analysis is the appropriate level of judicial scrutiny to apply to this case. We disagree with Mary F.-R.'s contention that strict scrutiny applies due to her fundamental liberty interest. While liberty is a fundamental right, *Foucha v. Louisiana*, 504 U.S. 71, 86 (1992), and involuntary civil commitment is a "significant deprivation of liberty," *Addington v. Texas*, 441 U.S. 418, 425 (1979), Mary F.-R.'s challenge relates only to the jury procedures available for initial commitment hearings under Wis. Stat. § 51.20 and not to the use of involuntary commitments in general. Unlike a situation where protection for a fundamental liberty interest is interfered with impermissibly, having a six-person jury trial is not the "equivalent to having no jury trial at all." *State v. Huebner*, 2000 WI 59, ¶ 18, 235

Wis. 2d 486, 611 N.W.2d 727. There is no right to a
12–person jury in civil proceedings such as here. *Id.*,
¶¶ 17–19.

*Id.*, ¶ 38.

¶ 16.  A similar analysis applies here. The continuation of a Wis. Stat. ch. 980 civil commitment is a significant deprivation of liberty, but Knipfer's equal protection challenge relates only to whether the *Daubert* evidentiary standard applies, not to the use of ch. 980 commitments in general. And, as we suggested in *Alger*, being subject to the pre-*Daubert* standard is not the same as being deprived of a meaningful opportunity to challenge expert evidence. *See Alger*, 2013 WI App 148, 352 Wis. 2d 145, ¶ 22. Finally, there is no standalone right to the application of the *Daubert* standard.

¶ 17.  Indeed, the circuit court's reasoning is similar to the supreme court's reasoning in *Mary F.-R.* The circuit court here explained:

> [C]ertainly Mr. Knipfer's liberty interests are a fundamental right . . . . But that's not I think directly on point . . . . The fundamental right that Mr. Knipfer has [as relevant here] is a right to a fair hearing and proceeding and process. And nothing about the prior evidentiary standard denied Mr. Knipfer a fair trial or hearing or proceeding and . . . he does not have a constitutional right to the new standards.

Knipfer's arguments do not come to grips with this reasoning.

¶ 18.  Accordingly, we conclude that strict scrutiny review does not apply. And, because we already concluded in *Alger* that the statute survives rational basis review in this context, we reject Knipfer's equal protection challenge.

571

¶ 19.   We turn to Knipfer's due process challenge. Knipfer invokes both procedural and substantive due process, but he does not provide a separate analysis for the two. For the most part, he repeats his equal protection arguments. We need not revisit those arguments.

¶ 20.   As far as we can discern, Knipfer at most makes one new argument under the heading of due process. Specifically, Knipfer seems to argue that, given the liberty interest at stake, the *Daubert* standard is necessary to ensure that WIS. STAT. ch. 980 discharge proceedings are reliable enough to satisfy due process concerns. If that is Knipfer's argument, we reject it. Even if it is true that the *Daubert* standard increases the reliability of discharge proceedings, this does not mean that those proceedings are unreliable without the standard. At a minimum, we would require additional legal or factual support from Knipfer in order to seriously consider this argument.

### *Conclusion*

¶ 21.   In sum, we affirm the circuit court's order denying Knipfer's petition for discharge from his commitment under WIS. STAT. ch. 980.

*By the Court.*—Order affirmed.