# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP225 & 2013AP578 |
| COMPLETE TITLE: | In re the commitment of Michael Alger: |

State of Wisconsin,
              Petitioner-Respondent,
        v.
Michael Alger,
              Respondent-Appellant-Petitioner.
--------------------------------------------------
In re the commitment of Ronald Knipfer:

State of Wisconsin,
              Petitioner-Respondent,
        v.
Ronald Knipfer,
              Respondent-Appellant-Petitioner.

---

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 145, 841 N.W.2d 329)
(Ct. App. 2013 – Published)
PDC No.: 2013 WI App 148
----------------------------------------------
REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 352 Wis. 2d 563, 842 N.W.2d 526)
(Ct. App. 2014 – Published)
PDC No.: 2014 WI App 9

---

| | |
|---|---|
| OPINION FILED: | January 20, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 2, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit/Circuit |
| COUNTY: | Outagamie/Dane |
| JUDGE: | John A. Des Jardins/Nicholas McNamara |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For respondent-appellant-petitioner Michael Alger, there were briefs by *Steven D. Phillips*, assistant state public defender. Oral argument by *Steven D. Phillips*.

For respondent-appellant-petitioner Ronald Knipfer, there were briefs by *Donald T. Lang*, assistant state public defender, and oral argument by *Donald T. Lang*.

For the petitioner-respondent in both cases, the cause was argued by *Nancy A. Noet*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos.   2013AP225 & 2013AP578
(L.C. Nos.  2004CV654 & 2002CI3)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In re the commitment of Michael Alger:**

**State of Wisconsin,**

**Petitioner-Respondent,**

**v.**

**Michael Alger,**

**Respondent-Appellant-Petitioner.**

**FILED**

**JAN 20, 2015**

Diane M. Fremgen
Clerk of Supreme Court

**In re the commitment of Ronald Knipfer:**

**State of Wisconsin,**

**Petitioner-Respondent,**

**v.**

**Ronald Knipfer,**

**Respondent-Appellant-Petitioner.**

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   ANNETTE KINGSLAND ZIEGLER, J.   This is a review of two published decisions of the court of appeals, State v. Alger,

2013 WI App 148, 352 Wis. 2d 145, 841 N.W.2d 329, and State v. Knipfer, 2014 WI App 9, 352 Wis. 2d 563, 842 N.W.2d 526.[1] In Alger the court of appeals affirmed the Outagamie County Circuit Court's[2] order denying Michael Alger's ("Alger") petition for discharge from involuntary commitment under Wis. Stat. ch. 980 as a sexually violent person, as defined in Wis. Stat. § 908.01(7) (2011-12).[3] In Knipfer the court of appeals affirmed the Dane County Circuit Court's[4] order denying Ronald Knipfer's ("Knipfer") petition for discharge from involuntary commitment under Wis. Stat. ch. 980 as a sexually violent person.

¶2 Both Alger and Knipfer argue that the circuit courts erred by refusing to apply the Daubert[5] evidentiary standard

---

[1] We consolidated these two cases after oral argument because they present similar issues and facts.

[2] The Honorable John A. Des Jardins presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. Wisconsin Stat. § 980.01(7) provides:

"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

[4] The Honorable Nicholas McNamara presided.

[5] See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993) (holding that, under the Federal Rules of Evidence, expert testimony must be reliable and relevant to be admissible).

2

under Wis. Stat. § 907.02(1)[6] to the State's expert witnesses who testified in their Chapter 980 discharge petition trials. The legislature provided that the Daubert standard, which requires that particularized standards be met before an expert's testimony can be admitted, would "first apply to actions or special proceedings that are commenced on the effective date of this subsection [February 1, 2011]." 2011 Wis. Act 2, § 45(5).[7] Both Alger and Knipfer argue that the Daubert evidentiary standard should have applied to the State's expert testimony at

---

[6] Wisconsin Stat. § 907.02(1) provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Wisconsin Stat. § 907.02(1) was adopted by 2011 Wis. Act 2, § 34M.

[7] 2011 Wis. Act 2, § 45(5) provides:

CIVIL ACTIONS. The treatment of sections 230.85(3)(b), 802.10(7), 809.103(2)(a), 814.04 (intro.), 814.29(3)(a), 895.043(6), 895.044, 895.045(3), 895.046, 895.047, and 907.03 of the statutes, the renumbering and amendment of sections 907.01 and 907.02 of the statutes, and the creation of sections 907.01(3) and 907.02(2) of the statutes first apply to actions or special proceedings that are commenced on the effective date of this subsection.

The effective date was the following day, February 1, 2011. See Wis. Stat. § 991.11.

trial on their Chapter 980 discharge petitions because the petitions commenced "actions" or "special proceedings" after the Daubert standard's first date of applicability.[8]  Alger and Knipfer further argue that their constitutional right to equal protection was violated when the Daubert evidentiary standard did not apply to and thus bar the State's expert testimony in their Chapter 980 discharge petition trials.[9]  Knipfer also argues that his constitutional right to due process was violated because the circuit court did not apply the Daubert standard to the State's expert testimony in his Chapter 980 discharge petition trial.[10]

---

[8] The court of appeals held that Alger conceded that his discharge petition did not commence a special proceeding. State v. Alger, 2013 WI App 148, ¶11, 352 Wis. 2d 145, 841 N.W.2d 329. Knipfer's argument also centers on whether the discharge petition commenced an "action." Nevertheless, we will address whether Alger's and Knipfer's Chapter 980 discharge petitions commenced "special proceedings."

[9] Although Alger and Knipfer seem to argue that the mere failure to apply the Daubert evidentiary standard was unconstitutional, their argument seems to hinge on their view that the State's expert testimony would have been inadmissible under the Daubert standard.

[10] The Fourteenth Amendment to the United States Constitution provides in part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." This court has held that the Wisconsin Constitution's due process clause is the substantial equivalent of the federal due

(continued)

4

¶3 The State argues that the Daubert evidentiary standard does not apply to Alger's and Knipfer's petitions to discharge their Wis. Stat. ch. 980 commitments. The State contends that those discharge petitions did not commence "actions" or "special proceedings." Instead, the State argues, those discharge petitions are part of the underlying Chapter 980 commitments, which commenced several years before the Daubert standard's first date of applicability. The State also argues that the legislature had a rational basis for not applying the Daubert standard to the State's expert witnesses in Alger's and Knipfer's Chapter 980 discharge petition trials such that no violation of equal protection or due process occurred.

¶4 We conclude that the Daubert evidentiary standard under Wis. Stat. § 907.02(1) does not apply to expert testimony in Alger's and Knipfer's Wis. Stat. ch. 980 discharge petition trials because their discharge petitions did not "commence" "actions" or "special proceedings." The Daubert standard applies to "actions" or "special proceedings" commenced on or after February 1, 2011. The original Chapter 980 commitments here began several years before the Daubert standard was adopted, and although Alger's and Knipfer's petitions seek relief from those original commitments, those filings do not constitute the "commencement" of an "action" or a "special

process clause. State v. West, 2011 WI 83, ¶5 n.2, 336 Wis. 2d 578, 800 N.W.2d 929 (citation omitted). This court's interpretation is the same for the state and federal equal protection clauses. Id. (citation omitted).

5

proceeding." We also conclude that because the legislature had a rational basis for not applying the Daubert evidentiary standard to expert testimony in post-Daubert Chapter 980 discharge petitions that seek relief from pre-Daubert Chapter 980 commitments, no violation of equal protection or due process occurred.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. State v. Alger

¶5 It is undisputed that Alger was deemed to be a sexually violent person and was involuntarily committed under Wis. Stat. ch. 980 on May 10, 2005. He has been under Chapter 980 commitment ever since.

¶6 In the six years between his Chapter 980 commitment and Wisconsin's adoption of the Daubert evidentiary standard, Alger filed one petition for discharge and much other correspondence with the committing court. The Daubert standard was not a Wisconsin evidentiary standard during any prior proceeding in Alger's Chapter 980 commitment.

¶7 On April 21, 2011, about two months after Wisconsin adopted the Daubert evidentiary standard, Alger filed a petition for discharge from his Chapter 980 commitment. The petition relied on Alger's expert's opinion that Alger was no longer a sexually violent person. The State's expert opined that Alger was still a sexually violent person and should not be discharged from Chapter 980 commitment.

¶8 On July 29, 2011, Alger filed a motion in limine to exclude the State's expert testimony at the discharge petition

6

trial on the ground that the testimony did not meet the newly adopted Daubert evidentiary standard. The State responded and argued that the Daubert standard did not apply because Alger's underlying commitment began before the Daubert standard was first applicable, and that the discharge petition was not a new "action" or "special proceeding." On November 18, 2011, Alger filed a supplemental memorandum in support of his motion in limine in which he also argued that his constitutional right to equal protection would be violated if the Daubert standard did not apply to the State's expert testimony in his Chapter 980 discharge petition trial. On November 23, 2011, Alger filed another Chapter 980 discharge petition and that petition was merged with his previously filed discharge petition.

¶9 On January 30, 2012, the circuit court denied Alger's motion in limine. The court concluded that the Daubert evidentiary standard did not apply to Alger's Chapter 980 discharge petition. The court reasoned that Alger's discharge petition, although filed after the Daubert standard was first applicable, was part of the underlying Chapter 980 commitment proceeding that began when the State filed "[a] petition for a commitment trial under [Wis. Stat. §] 980.02" several years before the Daubert standard was even adopted. The court also concluded that the failure to apply the Daubert standard to Alger's Chapter 980 discharge petition did not violate equal protection.

¶10 On August 20, 2012, Alger's Chapter 980 discharge petition was tried before a six-person jury. Two expert

7

witnesses testified on behalf of Alger and two experts testified on behalf of the State.  The jury found that Alger still met the criteria for Chapter 980 commitment.  On August 22, 2012, the court entered an order denying Alger's Chapter 980 discharge petition.

¶11  On November 19, 2013, the court of appeals affirmed the circuit court's order denying Alger's Chapter 980 discharge petition.

¶12  On December 18, 2013, Alger petitioned this court for review, which we granted on May 23, 2014.

## B. State v. Knipfer

¶13  It is undisputed that Knipfer was deemed to be a sexually violent person and was involuntarily committed under Wis. Stat. ch. 980 on October 1, 2003.  He has been under Chapter 980 commitment ever since.

¶14  In the seven and a half years between his Chapter 980 commitment and Wisconsin's adoption of the Daubert evidentiary standard, Knipfer filed three petitions for discharge and much other correspondence with the committing court.  The Daubert standard was not a Wisconsin evidentiary standard during any prior proceeding in Knipfer's Chapter 980 commitment.

¶15  On May 11, 2012, more than one year after Wisconsin adopted the Daubert evidentiary standard, Knipfer filed a petition for discharge from his involuntary Chapter 980 commitment.  The petition relied on Knipfer's expert's opinion that Knipfer was no longer a sexually violent person.  The

8

State's expert opined that Knipfer was still a sexually violent person and should not be discharged from Chapter 980 commitment.

¶16 Knipfer argued that the Daubert evidentiary standard applied to the State's expert testimony in his Chapter 980 discharge petition trial such that the State's expert would be precluded from testifying. He also argued that his constitutional rights to equal protection and due process would be violated if the Daubert standard did not apply to exclude that expert testimony.

¶17 The State argued that the Daubert evidentiary standard did not apply to expert testimony in Knipfer's Chapter 980 discharge petition trial because, like Alger's discharge petition, Knipfer's discharge petition did not commence a new "action" or "special proceeding," and Knipfer's rights to equal protection and due process were not thereby violated.

¶18 On September 14, 2012, the circuit court held a bench trial on Knipfer's Chapter 980 discharge petition. The court held that the Daubert evidentiary standard did not apply to the State's expert testimony in the discharge petition trial because Knipfer's discharge petition was essentially a motion within the Chapter 980 commitment action, not a separate action or proceeding. The court also held that the failure to apply the Daubert standard to the expert testimony in the discharge petition trial did not violate Knipfer's equal protection or due process rights. On September 20, 2012, the court held that Knipfer still met the criteria for Chapter 980 commitment and entered an order denying Knipfer's discharge petition.

¶19 On December 23, 2013, the court of appeals affirmed the circuit court's order denying Knipfer's Chapter 980 discharge petition.

¶20 On January 27, 2014, Knipfer petitioned this court for review, which we granted on May 23, 2014.

## II. ANALYSIS

### A. Standard of Review and Principles of Statutory Interpretation

¶21 The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court. State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238 (citing Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶24, 339 Wis. 2d 125, 810 N.W.2d 465). This court begins statutory interpretation with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. We interpret statutory language in relation to surrounding or closely-related statutes. Id., ¶46. "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id.

¶22 The constitutionality of a statute is also a question of law that this court reviews de novo while benefitting from

10

the analyses of the court of appeals and circuit court. State v. Smith, 2010 WI 16, ¶8, 323 Wis. 2d 377, 780 N.W.2d 90 (citing State v. Weidner, 2000 WI 52, ¶7, 235 Wis. 2d 306, 611 N.W.2d 684; State v. Janssen, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998)). A statute is presumed constitutional. Id. (citing Janssen, 219 Wis. 2d at 370). A party challenging a statute's constitutionality bears a heavy burden to overcome that presumption. Id. (citing State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328). A party challenging a statute does not overcome the presumption of constitutionality by establishing that a statute's constitutionality is doubtful or that a statute is probably unconstitutional. Id. (citing Cole, 264 Wis. 2d 520, ¶11). "Instead, the party challenging a statute's constitutionality must 'prove that the statute is unconstitutional beyond a reasonable doubt.'" Id. (quoting Cole, 264 Wis. 2d 520, ¶11).

B. Whether the Daubert Evidentiary Standard Applies to Alger's and Knipfer's Chapter 980 Discharge Petitions

¶23 In short, Alger and Knipfer argue that the Daubert evidentiary standard applies to the State's expert testimony in their Chapter 980 discharge petition trials. They contend that their Chapter 980 discharge petitions "commenced" "actions" or "special proceedings" after February 1, 2011, the first date of the Daubert standard's applicability. They argue that the State's initial petitions for Chapter 980 commitment began separate actions that concluded when the circuit courts ordered Alger and Knipfer to be committed in 2005 and 2003,

11

respectively. Alger and Knipfer reason that the circuit courts' initial commitment orders were final because they had a right to appeal from the orders, and a final order "disposes of the entire matter in litigation as to one or more of the parties." Wis. Stat. § 808.03(1). They further contend that a committing court's continuing administrative authority over a Wis. Stat. ch. 980 commitment does not mean that a discharge petition is part of the underlying commitment proceeding. They reason that a committing court generally takes no action with respect to a Chapter 980 committed person until the person petitions the court. They assert that Chapter 980 discharge proceedings are separately governed by their own set of rules and procedures. Alger and Knipfer also note that a Chapter 980 discharge petition must allege that the petitioner's condition has changed since being committed. For these reasons, Alger and Knipfer assert that the Daubert evidentiary standard should apply to the State's expert testimony in their Chapter 980 discharge petition trials despite the fact that it did not apply to the initial commitment.

¶24 Alger and Knipfer further argue that failing to apply the Daubert evidentiary standard to their Chapter 980 discharge petitions at issue results in the pre-Daubert standard applying to every discharge petition they might file during their present commitments, even those petitions filed decades after the

12

Daubert standard was adopted. They contend that the legislature did not intend that absurd result.[11]

¶25 The State argues that the Daubert evidentiary standard does not apply to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials. The State responds that a Chapter 980 discharge petition does not "commence" an "action" or a "special proceeding." Instead, according to the State, a discharge petition seeks relief from a Chapter 980 commitment. The State asserts that applying the pre-Daubert standard to Chapter 980 discharge petitions filed years after the Daubert standard was adopted would not be absurd because when a court reviews a Chapter 980 discharge petition, it may consider evidence that was admitted in a commitment hearing or prior discharge hearing under the pre-Daubert standard. The State

---

[11] Knipfer makes an additional argument that the Daubert evidentiary standard should apply to expert testimony at his Chapter 980 discharge petition trial because amendments to procedural rules generally apply retroactively. E.g., Trinity Petroleum, Inc. v. Scott Oil Co., 2007 WI 88, ¶40, 302 Wis. 2d 299, 735 N.W.2d 1 ("The general, well-recognized rule in Wisconsin jurisprudence is that 'if a statute is procedural or remedial, rather than substantive, the statute is generally given retroactive application.'") (quoting Gutter v. Seamandel, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981)). However, that general rule is inapplicable if the amendment's text explains when the new rule first applies. See id., ¶¶34-39. In the present cases, that general rule is inapplicable because the legislature explained that the Daubert standard would "first apply to actions or special proceedings that are commenced on the effective date of this subsection." 2011 Wis. Act 2, § 45(5).

rejects the notion that the pre-Daubert standard was so deficient that its continued application would be absurd.

¶26 We conclude that the Daubert evidentiary standard under Wis. Stat. § 907.02(1) does not apply to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials because their Chapter 980 discharge petitions did not "commence" "actions" or "special proceedings." Instead, the discharge petitions are part of the underlying Chapter 980 commitments that occurred several years before the Daubert standard's initial applicability on February 1, 2011.

¶27 In analyzing the arguments, we must first define the relevant words: "commence," "actions," and "special proceedings."[12] In Alger, the court of appeals defined "commence" as "'begin; start[.]'" Alger, 352 Wis. 2d 145, ¶12 (quoting New Oxford American Dictionary 343 (2001)). "Accordingly, Wis. Stat. § 907.02(1) first applies to [actions or special proceedings] begun or started on February 1, 2011." Id. We agree.

¶28 "'An action is an ordinary proceeding in a court of justice by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'" Ruediger v. Sheedy, 83 Wis. 2d 109, 121, 264 N.W.2d 604 (1978) (quoting State ex rel. Ashley v. Circuit Court for Milwaukee Cnty., 219 Wis. 38, 43,

---

[12] See supra note 7.

261 N.W. 737 (1935)). The word "action" "refer[s] to an entire proceeding, not to one or more parts within a proceeding." State ex rel. Henderson v. Raemisch, 2010 WI App 114, ¶22, 329 Wis. 2d 109, 790 N.W.2d 242. "The word 'action' in the Wisconsin statutes denotes the entire controversy at issue." Id., ¶23 (emphasis added) (quoting Gowan v. McClure, 185 Wis. 2d 903, 912, 519 N.W.2d 692 (Ct. App. 1994)) (quotation marks omitted); see also id. (stating that "action" "refers to an entire proceeding, lawsuit or controversy"). For example, a motion to establish paternity is not an action. DiBenedetto v. Jaskolski, 2003 WI App 70, ¶¶25-26, 261 Wis. 2d 723, 661 N.W.2d 869. Similarly, a probate matter is not an action. See Estate of Stoeber v. Pierce, 36 Wis. 2d 448, 452, 153 N.W.2d 599 (1967).

¶29 A special proceeding, like an action, is a stand-alone proceeding that is not part of an existing case. Black's Law Dictionary 1398 (10th ed. 2014) (A special proceeding is "[a] proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately."); Wellens v. Kahl Ins. Agency, Inc., 145 Wis. 2d 66, 69, 426 N.W.2d 41 (Ct. App. 1988) ("[A] special proceeding [is] one occurring entirely outside the underlying action . . . ."); Ryder v. Soc'y Ins., 211 Wis. 2d 617, 619, 565 N.W.2d 277 (Ct. App. 1997) (citing Black's Law Dictionary 1084 (5th ed. 1979); Voss v. Stoll, 141 Wis. 267, 271, 124 N.W. 89 (1910)) ("Special proceedings [do] not include matters that [are] incident to an existing action."). Examples of special

15

proceedings include a stand-alone proceeding for contempt or to condemn land, Wellens, 145 Wis. 2d at 69; a non-party's motion to intervene, id.; a voluntary assignment for the benefit of creditors, Wisconsin Brick & Block Corp. v. Vogel, 54 Wis. 2d 321, 324-25, 195 N.W.2d 664 (1972); and a proceeding to obtain discovery of books. Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 616-17 (1869). These examples demonstrate how a special proceeding involves a separate filing outside of an action.

¶30 By contrast, the following are not deemed to be special proceedings: a motion for costs and attorney fees, Ryder, 211 Wis. 2d at 619; a motion to vacate a judgment on the ground of excusable neglect, Wellens, 145 Wis. 2d at 70; and a party's motion to make a non-party into a party. State v. Wisconsin Tel. Co., 134 Wis. 335, 341, 113 N.W. 944 (1907). Similarly, a motion for postconviction relief "is a part of the original criminal action," and "is not a separate proceeding." Wis. Stat. § 974.06(2). All of these examples are neither actions nor special proceedings but rather, involve a filing made within an action.

¶31 In light of the foregoing definitions and examples, Alger's and Knipfer's Chapter 980 discharge petitions do not "commence" an "action" or a "special proceeding" because the discharge petitions could not exist without the initial commitments and are "a part of" the initial commitments. Hence, even though the requests for discharge are seeking relief from commitments, the requests are necessarily dependent on and

16

tethered to the original commitments. A discharge petition does not "start" or "begin" an "action" or a "special proceeding" but rather, it is more akin to a motion within an existing matter. A discharge proceeding is "incident to an existing action" and does not stand alone or exist "entirely outside the original action." See Ryder, 211 Wis. 2d at 619; Wellens, 145 Wis. 2d at 69. Instead, Alger's and Knipfer's discharge petitions are a part of the "entire controversy at issue," the underlying Chapter 980 commitments. See Henderson, 329 Wis. 2d 109, ¶23. The analogy between a Chapter 980 discharge petition and a motion for postconviction relief is particularly apt as each seeks relief from a final order without directly challenging the final order. See Wis. Stat. § 974.06(1), (2); Wis. Stat. § 980.09(1). A Chapter 980 discharge petition, like a motion for postconviction relief, does not "commence" an "action" or a "special proceeding."

¶32 Stated differently, a Chapter 980 discharge petition is necessarily tied to the underlying petition for commitment and commitment order in multiple ways. Because a Chapter 980 discharge petition seeks discharge from commitment, a Chapter 980 discharge petition cannot exist unless a person was committed in a Chapter 980 action. See State v. Arends, 2010 WI 46, ¶15, 325 Wis. 2d 1, 784 N.W.2d 513 ("If the State wishes to commit a sexually violent offender, it must file a [commitment] petition . . . ."). A valid Chapter 980 commitment order cannot otherwise be terminated without a court order discharging that person from commitment; such discharge orders most often result

17

from a discharge petition and trial. See Wis. Stat. §§ 980.06, 980.09; Arends, 325 Wis. 2d 1, ¶¶17, 33 n.19. Rather than being a discrete action or proceeding that ends with a commitment order, a Chapter 980 commitment action is an ongoing process that potentially extends far beyond the original commitment order.

¶33 Further, the Chapter 980 discharge petition process necessarily relates back to the prior proceedings in the initial court file. For example, a Chapter 980 discharge petition must allege facts that suggest that the petitioner's "condition has changed since the most recent order denying a petition for discharge after a hearing on the merits, or since the date of his or her initial commitment order if the person has never received a hearing on the merits of a discharge petition," such that he or she is no longer a sexually violent person. Wis. Stat. § 980.09(1) (2013-14) (emphases added). When reviewing a Chapter 980 discharge petition, a "court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, [and] any current or past [annual reexamination] reports filed under s. 980.07 . . . ."[13] Wis. Stat. § 980.09(2) (2013-14) (emphases added).

---

[13] Every 12 months after a person has been committed under Wis. Stat. ch. 980, the Department of Health Services ("Department") must reexamine the person and make a report of the reexamination. Wis. Stat. § 980.07(1), (2). During the annual reexamination, the Department must also make a report on the person's treatment progress. Wis. Stat. § 980.07(4). The
(continued)

¶34 Moreover, the court that originally committed a person under Chapter 980 retains administrative authority over that person during the period of commitment. For example, the committing court may order the committed person to be reexamined at any time. Wis. Stat. § 980.07(3). The committing court receives copies of the Department of Health Services' annual reexamination report and progress treatment report on the committed person.[14] See Wis. Stat. § 980.07(6)(a) (2013-14). Every petition for supervised release or discharge must be submitted to the committing court. Wis. Stat. §§ 980.08(1), 980.09(1). After receiving a petition for supervised release, the committing court appoints an expert to examine the petitioner and holds a hearing on the petition. Wis. Stat. § 980.08(3)(a), (4)(a) (2013-14). The committing court also reviews a discharge petition and oversees any necessary discharge hearing or trial. § 980.09(1), (2), (3). Each of these proceedings is part and parcel of the initial Chapter 980 action rather than the commencement of an action or a special proceeding.

¶35 The foregoing discussion demonstrates that a Chapter 980 discharge petition does not "commence" an "action" or a

---

Department must submit each reexamination report and treatment progress report to the committing court. Wis. Stat. § 980.07(6)(a) (2013-14). The committing court may order a reexamination at any time while the person is committed. § 980.07(3).

[14] See supra note 13 for a discussion of these reports.

19

"special proceeding," but rather, it is more akin to a motion or petition in an existing action. A Chapter 980 discharge petition does not seek relief independently of the "entire controversy" of the underlying commitment. Therefore, a Chapter 980 discharge petition is part of the underlying commitment action and does not "commence" an "action" or a "special proceeding." See Henderson, 329 Wis. 2d 109, ¶23 (The word "action" "refers to an entire proceeding, lawsuit or controversy."); Black's Law Dictionary 1398 (10th ed. 2014) (A special proceeding "can be commenced independently of a pending action . . . ."). Stated differently, a Chapter 980 discharge petition is neither a separate "action" nor is it a "special proceeding" because it does not "occur[] entirely outside the underlying [Chapter 980] action." See Wellens, 145 Wis. 2d at 69.

¶36 We also disagree with Alger and Knipfer that failing to apply the Daubert evidentiary standard to the State's expert testimony in their Chapter 980 discharge petition trials is an absurd result that the legislature did not intend. First, the plain language of 2011 Wisconsin Act 2, § 45(5) states that the Daubert standard first applies to "actions" or "special proceedings" "commenced" on February 1, 2011. Second, the pre-Daubert standard was not so deficient that its continued application to Alger's and Knipfer's Chapter 980 discharge petition trials would be absurd. Alger and Knipfer opine that the Daubert standard is an entirely new and higher standard for expert opinions to be admissible. If it is as Alger and Knipfer

20

suggest applying the Daubert standard could inject significant confusion and difficulty in review of the original Chapter 980 commitment because it would confound competing standards. Specifically, the post-Daubert experts would be reviewing, in part, the pre-Daubert expert opinions to render an opinion as to whether the committed person's condition has changed such that he or she is no longer a sexually violent person.

¶37 The reality is that this kind of expert testimony offered at a Chapter 980 hearing or trial may be admissible regardless of which standard applies. See Fed. R. Evid. 702 advisory committee's notes (2000 amendments) ("A review of the caselaw after Daubert shows that the rejection of expert testimony is the exception rather than the rule. Daubert did not work a 'seachange over federal evidence law . . . .'") (quoting United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss., 80 F.3d 1074, 1078 (5th Cir. 1996)). For example, the testimony offered in the cases at issue is from licensed psychologists who hold doctoral degrees. Even pre-Daubert, circuit courts served a gate-keeping function. The pre-Daubert standard required that (1) expert testimony assist the trier of fact; (2) expert testimony be based on "scientific, technical, or other specialized knowledge"; and (3) an expert be qualified "by knowledge, skill, experience, training, or education." Wis. Stat. § 907.02 (2009-10). Post-Daubert, the expert testimony at issue would be subject to an additional "reliability" component. But a hearing is not always required for expert testimony to be admitted under the Daubert standard.

21

Daniel D. Blinka, The Daubert Standard in Wisconsin: A Primer, Wis. Lawyer, Mar. 2011 (citing United States v. Pena, 586 F.3d 105, 110-11 (1st Cir. 2009)). Contrary to Alger's and Knipfer's suggestion, the State's expert testimony is not the kind of "junk science" that is rejected by the Daubert standard.

¶38 Accordingly, we conclude that the Daubert evidentiary standard in Wis. Stat. § 907.02(1) does not apply to the expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials.

### C. Whether the Failure to Apply the Daubert Evidentiary Standard to Alger's and Knipfer's Chapter 980 Discharge Petitions Violates Equal Protection and Due Process

¶39 To determine the merits of an equal protection claim or a substantive due process claim,[15] we must first determine which level of judicial scrutiny applies. Smith, 323 Wis. 2d 377, ¶12. If the challenged legislation neither implicates a fundamental right nor discriminates against a

---

[15] Knipfer alleges violations of substantive and procedural due process. "Under a procedural due process analysis, we must determine first whether there exists a liberty interest of which the individual has been deprived, and if so, whether the procedures used to deprive that liberty interest were constitutionally sufficient." West, 336 Wis. 2d 578, ¶83 (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). Although Knipfer has a protectable liberty interest in freedom from bodily restraint, id., ¶85, he has no protectable interest in the Daubert evidentiary standard. See Brown v. Watters, 599 F.3d 602, 616 (7th Cir. 2010). Therefore, the failure to apply the Daubert standard to Knipfer's Chapter 980 discharge petition does not violate his right to procedural due process. See West, 336 Wis. 2d 578, ¶89. Alger does not rely on due process at all. Accordingly, our analysis will focus on substantive due process and equal protection.

22

suspect class, we apply rational basis review rather than strict scrutiny to the legislation.[16]  Id.  A law subject to strict scrutiny will be upheld "only if narrowly tailored 'to serve a compelling state interest.'"  State v. Mary F.-R., 2013 WI 92, ¶35, 351 Wis. 2d 273, 839 N.W.2d 581 (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)).  We will uphold legislation under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest."  Smith, 323 Wis. 2d 377, ¶12 (quoting State v. McManus, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989)) (quotation marks omitted).

1. Which Level of Judicial Scrutiny Applies?

¶40 Knipfer[17] argues that strict scrutiny applies to the failure to apply the Daubert evidentiary standard to expert testimony in his Chapter 980 discharge petition trial because

---

[16] A law that implicates a fundamental right is not necessarily subject to strict scrutiny.  Whether strict scrutiny applies sometimes depends on the degree to which the law burdens a fundamental right.  See Burdick v. Takushi, 504 U.S. 428, 434 (1992) (strict scrutiny applies to "'severe' restrictions" on the fundamental right to vote, and rational basis review applies to "'reasonable, nondiscriminatory restrictions'" on that right) (citations omitted); Zablocki v. Redhail, 434 U.S. 374, 386-88 (1978) (rational basis review applies to "reasonable regulations that do not significantly interfere with" the fundamental right to marry, and strict scrutiny applies to a law that "significantly interferes" with that right) (citations omitted).

[17] The court of appeals held that Alger conceded that rational basis review applies.  See Alger, 352 Wis. 2d 145, ¶25. Our strict scrutiny and rational basis analysis applies to Alger and Knipfer alike.

23

Chapter 980 commitment implicates his fundamental right to freedom from bodily restraint. Knipfer relies on cases where courts "assumed, without deciding" that strict scrutiny applied to claims challenging the constitutionality of aspects of Chapter 980 commitment. See State v. West, 2011 WI 83, ¶91, 336 Wis. 2d 578, 800 N.W.2d 929; State v. Post, 197 Wis. 2d 279, 321, 541 N.W.2d 115 (1995); State v. Williams, 2001 WI App 263, ¶11, 249 Wis. 2d 1, 637 N.W.2d 791. Knipfer also relies on Foucha v. Louisiana, where the Supreme Court stated that involuntary civil commitment implicates an individual's "fundamental" right to freedom from bodily restraint. Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Knipfer does not argue that a suspect class has been discriminated against.

¶41 The State argues that rational basis review applies because the failure to apply the Daubert evidentiary standard to expert testimony in Knipfer's Chapter 980 discharge petition trial does not implicate a fundamental right or discriminate against a suspect class. The State relies on Mary F.-R., where we applied rational basis review to a challenge against the use of a non-unanimous six-person jury in a Wis. Stat. ch. 51 commitment hearing.

¶42 We conclude that rational basis review applies to Alger's and Knipfer's constitutional claims because the failure to apply the Daubert evidentiary standard to expert testimony in a Chapter 980 discharge petition trial does not implicate a fundamental right. Our decision in Mary F.-R. is instructive. In that case, a circuit court ordered Mary F.-R. to be

24

involuntarily committed under Wis. Stat. § 51.20 for treatment for her mental illness after a six-person jury unanimously found that she qualified for such commitment. Mary F.-R., 351 Wis. 2d 273, ¶¶2, 6. Mary F.-R. appealed the commitment order. Before this court, she argued that § 51.20(11) violated her right to equal protection because it authorized Chapter 51 commitment based on a six-person non-unanimous jury verdict. Id., ¶2. Her equal protection claim rested on the fact that potential Wis. Stat. ch. 51 committed persons were treated differently than potential Wis. Stat. ch. 980 committed persons because the latter persons had a statutory right to a unanimous 12-person jury at their commitment hearings. Id., ¶¶1-2. Mary F.-R. argued that this court should apply strict scrutiny to § 51.20(11) because Chapter 51 commitment implicates her fundamental right to freedom from bodily restraint. Id., ¶36.

¶43 We held that rational basis review was the appropriate level of judicial scrutiny. Id., ¶38. We recognized that "liberty is a fundamental right," id. (citing Foucha, 504 U.S. at 86), and "involuntary civil commitment is a 'significant deprivation of liberty.'" Id. (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). However, rational basis review applied because "Mary F.-R.'s challenge relate[d] only to the jury procedures available for initial commitment hearings under Wis. Stat. § 51.20 and not to the use of involuntary commitments in general." Id. "There is no right to a 12-person jury in civil proceedings such as here." Id. (citing State v. Huebner, 2000 WI 59, ¶¶17-19, 235 Wis. 2d 486, 611 N.W.2d 727). Mary F.-R.

25

did not argue that the challenged legislation discriminated against a suspect class. Id.

¶44 Like in Mary F.-R., rational basis review applies in the present cases because the challenged legislation does not implicate the fundamental right to freedom from bodily restraint and there is no fundamental right to a particular evidentiary standard. Like Mary F.-R., Knipfer does not challenge "the use of involuntary commitments in general." Id. Instead, Knipfer challenges the unavailability of the Daubert evidentiary standard in his Chapter 980 discharge petition trial. Knipfer has no constitutional right to have the Daubert evidentiary standard apply. Brown v. Watters, 599 F.3d 602, 616 (7th Cir. 2010). Knipfer argues that strict scrutiny applies because "evidentiary standards . . . directly impact the substantive nature of the evidence that can ultimately be submitted and considered by the finder of fact." If Knipfer were correct, then every evidentiary ruling in a Chapter 980 hearing or trial could be subject to strict scrutiny. Precedent and the fact that deference is due to a circuit court's evidentiary ruling would militate otherwise. See State v. Mark, 2006 WI 78, ¶35, 292 Wis. 2d 1, 718 N.W.2d 90 (stating that a circuit court's evidentiary ruling, even in a Chapter 980 proceeding, is generally reviewed under a deferential standard). Although Chapter 980 involuntary commitment implicates the right to freedom from bodily restraint, the availability of the Daubert evidentiary standard in a Chapter 980 proceeding does not implicate that right so as to trigger strict scrutiny. See Mary

26

F.-R., 351 Wis. 2d 273, ¶38. There is no right to a particular evidentiary ruling in a Chapter 980 discharge petition trial.

¶45 Knipfer's reasons for distinguishing Mary F.-R. are unpersuasive. First, he argues that Mary F.-R. is distinguishable because the Daubert evidentiary standard, unlike a six-person, non-unanimous jury, directly impacts the right to physical liberty that is at stake in a commitment proceeding. He contends that the evidence considered by a jury more directly impacts the outcome of a commitment proceeding than the size or unanimity of a jury does. We reject this basis for distinguishing Mary F.-R. Knipfer does not persuade us that the pre-Daubert standard more directly impacts his liberty interest in a discharge trial than Mary F.-R. being tried by a non-unanimous, six-person jury in an original commitment trial. Indeed, the jury standard at issue in Mary F.-R. is more closely related to the liberty interest at stake in an original commitment proceeding than in a discharge trial. Moreover, that jury standard, under Wis. Stat. § 51.20(11), applies only to commitment proceedings brought under Wis. Stat. ch. 51, whereas the Daubert standard is a rule of evidence which is generally applicable in all proceedings, whether civil or criminal.

¶46 Knipfer's other ground for distinguishing Mary F.-R. and applying strict scrutiny is that the law at issue in Mary F.-R. differentiated between two groups that were not similarly situated (Chapter 51 committed persons and Chapter 980 committed persons), whereas the law at issue here differentiates between two groups that are similarly situated (persons whose Chapter

27

980 commitment was initiated before February 1, 2011, and persons whose Chapter 980 commitment was initiated on or after that date). We also disagree with this argument for applying strict scrutiny because strict scrutiny does not apply if neither a fundamental right is implicated nor a suspect class is discriminated against. See Smith, 323 Wis. 2d 377, ¶12. A court determines whether differently-treated groups are similarly situated and hence, whether equal protection is violated, by applying a particular level of judicial scrutiny. See Plyler v. Doe, 457 U.S. 202, 216-18 (1982); Mary F.-R., 351 Wis. 2d 273, ¶55 ("'[W]hen properly understood and applied, "similarly situated" is another way of stating the fundamental values of the Equal Protection Clause.'") (quoting Giovanna Shay, Similarly Situated, 18 Geo. Mason L. Rev. 581, 615 (2011)); Smith, 323 Wis. 2d 377, ¶15 ("The equal protection clause . . . 'is designed to assure that those who are similarly situated will be treated similarly.'") (quoting Treiber v. Knoll, 135 Wis. 2d 58, 68, 398 N.W.2d 756 (1987)).

¶47 Knipfer's reliance on cases where courts applied strict scrutiny in the Chapter 980 context requires further explanation. The cases relied upon by Knipfer challenged procedural aspects of Chapter 980 commitment which directly impacted one's right to freedom from bodily restraint, whereas the application of a particular rule of evidence is much further removed from that direct impact on restraint of freedom. See West, 336 Wis. 2d 578, ¶5 (challenging law that placed burden of proof on committed person seeking supervised release); Post, 197

28

Wis. 2d at 292-93 (challenging Chapter 980 commitment in general); Williams, 249 Wis. 2d 1, ¶¶2-3 (challenging prohibition on filing a petition for supervised release within first 18 months of commitment). Further, the courts in those cases "assumed, without deciding" that strict scrutiny was the appropriate level of judicial scrutiny for those equal protection claims. See West, 336 Wis. 2d 578, ¶¶91-99; Post, 197 Wis. 2d at 321; Williams, 249 Wis. 2d 1, ¶11.[18] Such an assumption is hardly a conclusion that strict scrutiny is the applicable standard in the cases at issue. In the present cases, rational basis review is appropriate because the Daubert standard is a generally applicable rule of evidence that does not directly impact one's right to freedom from bodily restraint. See Mary F.-R., 351 Wis. 2d 273, ¶38.

¶48 In sum, we hold that rational basis review applies to Knipfer's equal protection and substantive due process claims and to Alger's equal protection claim.

2. Whether Rational Basis Review Is Satisfied

¶49 Our analysis applying rational basis review is the same for Knipfer's substantive due process claim as for Alger's

---

[18] Knipfer asserts that this court in State v. Post held, rather than assumed without deciding, that strict scrutiny applied to a substantive due process claim challenging ch. 980 commitment in general. See State v. Post, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995). However, even if that interpretation of Post is correct, strict scrutiny does not apply in the present cases because the failure to apply the Daubert evidentiary standard to a Chapter 980 discharge petition does not directly impact a fundamental right.

and Knipfer's equal protection claims. See Smith, 323 Wis. 2d 377, ¶¶12, 16. To resolve the substantive due process and equal protection claims, we must determine whether a legitimate governmental interest is rationally furthered by the failure to apply the Daubert evidentiary standard to Alger's and Knipfer's Chapter 980 discharge petitions. See id., ¶12.

¶50 Rational basis review is deferential to the legislature. Id., ¶17. A legislative classification satisfies rational basis review if "'any reasonably conceivable state of facts . . . could provide a rational basis for the classification.'" Mary F.-R., 351 Wis. 2d 273, ¶52 (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). The legislature need not have actually based its decision on the reason conceived by a reviewing court. Id. (citing Beach Commc'ns, 508 U.S. at 315). Alger and Knipfer bear the "high burden" of proving that the failure to apply the Daubert evidentiary standard to expert testimony in their Chapter 980 discharge petition trials is unconstitutional beyond a reasonable doubt. Smith, 323 Wis. 2d 377, ¶18.

¶51 Alger and Knipfer[19] argue that the failure to apply the Daubert evidentiary standard to expert testimony in their Chapter 980 discharge petition trials violates equal protection because it arbitrarily differentiates between discharge

_____

[19] Although Knipfer argues that we should apply strict scrutiny, he also argues that he should prevail even if we apply rational basis review.

proceedings based upon when their underlying commitment proceedings began. Alger and Knipfer provide a hypothetical scenario in which the State files a Wis. Stat. ch. 980 commitment petition against Person A in January 2011 and files one against Person B in February 2011. Under this hypothetical scenario, both of these persons are committed and have discharge proceedings at the same time as each other. Alger and Knipfer argue that it would be unconstitutionally arbitrary to apply the Daubert standard to the discharge proceedings of Person B while applying the pre-Daubert standard to the discharge proceedings of Person A.

¶52 In his brief, "Alger concedes the state did have a legitimate interest in seeking to prevent the revision of [Wis. Stat. §] 907.02 from applying 'midstream' to litigation that was already pending (or even concluded) at the time this legislation was enacted." Alger argues that, in such litigation, attorneys would have prepared expert testimony in reliance on the pre-Daubert standard that was then in place. Because applying the Daubert standard to such litigation would be unfair and disruptive and would waste judicial resources, Alger concedes that the legislature lawfully prohibited application of the Daubert standard to such litigation. Similarly, Knipfer admits that "the legislature might have had a valid reason not to extend the Daubert standard to pending litigation insofar as litigants may have already relied upon the [pre-Daubert] standard in filing pleadings and preparing for trial."

31

¶53 However, Alger and Knipfer contend, the reasons for refusing to apply the Daubert evidentiary standard "midstream" to pending litigation do not apply to their Chapter 980 discharge petition trials. Alger and Knipfer reason that, because they filed their discharge petitions after the Daubert standard's first date of applicability, they and the State did not prepare any expert testimony for their discharge petition trials in reliance on the pre-Daubert standard. Alger and Knipfer therefore argue that the failure to apply the Daubert standard to expert testimony in their discharge petition trials is not rationally related to achieving a legitimate governmental interest.

¶54 The State argues that the failure to apply the Daubert evidentiary standard to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review and is therefore constitutional. The State argues that the legislature had to draw the line somewhere and the line it drew has a rational basis. The State reasons that the legislature's application of the Daubert standard to "actions" and "special proceedings" commenced on or after February 1, 2011, promoted efficiency and predictability and avoided difficulties involved with a rule that allows for retroactive application of the Daubert standard.

¶55 We hold that the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" "commenced" on or after February 1, 2011, satisfies rational basis review and therefore is constitutional. Alger

32

correctly concedes that ensuring the fair treatment of litigants, avoiding the disruption of pending litigation, and preserving judicial resources are legitimate governmental interests. See State ex rel. Schatz v. McCaughtry, 2003 WI 80, ¶43, 263 Wis. 2d 83, 664 N.W.2d 596 ("The State has a legitimate interest in . . . preserving judicial resources.") (citing State ex rel. Khan v. Sullivan, 2000 WI App 109, ¶10, 235 Wis. 2d 260, 613 N.W.2d 203). See also supra ¶¶36-37 (noting that applying the Daubert standard to Alger's and Knipfer's Chapter 980 discharge petitions could have caused confusion and difficulty).

¶56 Further, the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" "commenced" on or after February 1, 2011, is rationally related to achieving those legitimate governmental interests. The legislature could have rationally believed that retroactively applying a new rule of evidence to pending litigation would be unfair to litigants, waste judicial resources, and disrupt that litigation by resulting in motions, appeals, and retrials. See Martin v. Richards, 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995) (explaining that "retroactive legislation presents unique constitutional problems in that it often unsettles important rights" and may result in "unfairness").

¶57 When determining which cases will be subject to a new rule of evidence, the legislature is not constitutionally required to differentiate between various types of cases and retroactively apply the new rule to some types of cases and not

33

others.    Instead,  the  legislature  may  differentiate  between cases that were commenced before and after a particular date and may  apply  the  new  rule  of  evidence  to  only  cases  that  were commenced  after  that  date.    See  Sperry  &  Hutchinson  Co.  v. Rhodes, 220 U.S. 502, 505 (1911) ("[T]he 14th Amendment does not forbid  statutes  and  statutory  changes  to  have  a  beginning,  and thus  to  discriminate  between  the  rights  of  an  earlier  and  later time.");  Plankinton  Packing  Co.  v.  Wis.  Tax  Comm'n,  198  Wis. 368,  373,  224  N.W.  121  (1929)  (upholding  a  law  that  applied  a higher  interest  rate  to  tax  deficiencies  that  were  assessed before  1927  than  to  those  assessed  in  or  after  1927);  Montgomery Ward  &  Co.  v.  DOR,  142  Wis.  2d  772,  778-82,  419  N.W.2d  348  (Ct. App.  1987)  (upholding  a  law  that  applied  a  higher  interest  rate to  tax  deficiencies  that  were  assessed  on  or  after  August  1, 1981,  than  to  tax  deficiencies  that  were  assessed  before  that date).    Therefore,  in  the  present  cases,  the  legislature's decision  to  apply  the  Daubert  evidentiary  standard  to  "actions" and  "special  proceedings"  that  were  commenced  on  or  after February  1,  2011,  survives  constitutional  scrutiny.    See  Banas v.  State,  34  Wis.  2d  468,  473,  149  N.W.2d  571  (1967)  (The legislature has the "power to make reasonable rules for limiting the  admission  of  evidence  and  to  make  valid  classifications  of people for that purpose.").

¶58  We  also  conclude  that  application  of  the  Daubert evidentiary  standard  to  these  Chapter  980  discharge  petition trials  is  a  "midstream"  application  of  that  standard  to  pending litigation.    Alger's  and  Knipfer's  contrary  conclusion  is  based

34

on the mistaken premise that the only expert testimony relevant to their Chapter 980 discharge petitions is the expert testimony proffered at their discharge petition trials. But we have already concluded that a Chapter 980 discharge petition is part of a pending commitment action. As we explained earlier, when reviewing a Chapter 980 discharge petition, a court often considers expert testimony from a prior discharge proceeding or the initial commitment trial. See Wis. Stat. § 980.09(1), (2). The State's experts at Alger's and Knipfer's original Chapter 980 commitment trials were not subject to the Daubert evidentiary standard. The Daubert standard did not apply to any previous proceeding in Alger's and Knipfer's cases. However, a Chapter 980 discharge petition requires that an expert render an opinion based in part upon the previous determination of continued commitment. The fact that a petition for discharge requires an expert to evaluate and review prior expert opinions and whether commitment is still warranted, militates in favor of, not against, having the same legal standard apply. Thus, we reject Alger's and Knipfer's contention that their Chapter 980 discharge petitions were not part of a pending action that could be disrupted by "midstream" application of a new rule of evidence.[20] Moreover, as was previously discussed, this kind of

---

[20] Even if a Chapter 980 commitment is unlike other types of pending litigation that could be disrupted by "midstream" application of a new rule of evidence, the legislature's decision to apply the Daubert evidentiary standard to "actions" or "special proceedings" commenced on or after February 1, 2011, is still constitutional under rational basis review. A
(continued)

35

expert testimony in a Chapter 980 case will often meet the Daubert standard even though it was admitted under the pre-Daubert standard. See supra ¶37.

¶59 Our rejection of Alger's and Knipfer's equal protection challenges and Knipfer's substantive due process challenge is even supported by cases in which Wisconsin courts upheld changes to Chapter 980 procedures under strict scrutiny. See West, 336 Wis. 2d 578, ¶¶98-99 (upholding a statute that placed the burden of proof on a Chapter 980 committed person who petitions for supervised release); Williams, 249 Wis. 2d 1, ¶20 (upholding an 18-month waiting period for petitioning for supervised release). We conclude that the failure to apply the Daubert evidentiary standard to expert testimony at Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review. Further, the petitioners in Williams and West challenged unique procedures applicable to Chapter 980, whereas Alger's and Knipfer's challenges center on a generally applicable rule of evidence.

¶60 In sum, we hold that the failure to apply the Daubert evidentiary standard to expert testimony in Alger's and Knipfer's Chapter 980 discharge petition trials satisfies rational basis review, and therefore survives constitutional scrutiny.

---

legislative enactment can be rationally related to achieving a legitimate governmental interest even if it is overinclusive. See Vance v. Bradley, 440 U.S. 93, 108 (1979).

36

III. CONCLUSION

¶61 We conclude that the <u>Daubert</u> evidentiary standard under Wis. Stat. § 907.02(1) does not apply to expert testimony in Alger's and Knipfer's Wis. Stat. ch. 980 discharge petition trials because their discharge petitions did not "commence" "actions" or "special proceedings."  The <u>Daubert</u> standard applies to "actions" or "special proceedings" commenced on or after February 1, 2011.  The original Chapter 980 commitments here began several years before the <u>Daubert</u> standard was adopted, and although Alger's and Knipfer's petitions seek relief from those original commitments, those filings do not constitute the "commencement" of an "action" or a "special proceeding."  We also conclude that because the legislature had a rational basis for not applying the <u>Daubert</u> evidentiary standard to expert testimony in post-<u>Daubert</u> Chapter 980 discharge petitions that seek relief from pre-<u>Daubert</u> Chapter 980 commitments, no violation of equal protection or due process occurred.

*By the Court.*—The decisions of the court of appeals are affirmed.

37

¶62 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. The majority disregards its own reasoning to reach a result its opinion does not support.

¶63 It might be difficult to determine in some cases whether a particular proceeding is a special proceeding.[1] Nevertheless, when I apply the majority opinion's definition of a "special proceeding" to the instant cases, the most legally sound conclusion is that proceedings on a Chapter 980 petition for discharge are special proceedings.

¶64 Wisconsin Stat. § 907.02(1) (2011-12) sets forth the Daubert standard for the admissibility of expert testimony.[2] In enacting this statute, the legislature decreed that the Daubert standard first applies "to actions or special proceedings that are commenced on the effective date of this subsection [February 1, 2011]."[3]

¶65 Michael Alger and Ronald Knipfer, hereinafter referred to as the petitioners, filed Chapter 980 discharge petitions after February 1, 2011. Thus, whether the Daubert standard applies to their discharge proceedings turns on whether these petitions "commenced" "actions" or "special proceedings" under

---

[1] See Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 617 (1869) ("It may not be easy in all cases to determine what is a special proceeding.").

[2] See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993).

All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[3] 2011 Wis. Act 2, § 45(5).

the session law adopting the <u>Daubert</u> standard in Wis. Stat. § 907.0(1).[4]

¶66 All Chapter 980 proceedings are included in the Wisconsin Judicial Benchbook in its section on special proceedings. After a careful examination of the definition of "special proceeding" in <u>Black's Law Dictionary</u>, which the majority opinion employs; the case law regarding special proceedings on which the majority opinion relies; the detailed provisions of Chapter 980 governing commitment proceedings and discharge proceedings; and the legislative purpose for adopting the <u>Daubert</u> standard, I conclude that the petitioners commenced special proceedings by filing their Chapter 980 petitions for discharge. Thus, the <u>Daubert</u> standard should have been applied at the proceedings on the petitioners' discharge petitions. The majority opinion's contrary conclusion is unpersuasive.

¶67 Accordingly, I would remand the instant cases to their respective circuit courts to determine whether the challenged testimony satisfies the <u>Daubert</u> standard.

I

¶68 The majority opinion adopts the definition of "special proceeding" in <u>Black's Law Dictionary</u>: "A proceeding that can be commenced independently of a pending action and from which a final order may be appealed immediately."[5]

---

[4] <u>See</u> 2011 Wis. Act 2, § 45(5).

[5] <u>Black's Law Dictionary</u> 1398 (10th ed. 2014).

¶69 This definition contains two criteria. First, a special proceeding "can be commenced independently of a pending action."[6] Second, a special proceeding must result in a "final order" that can "be appealed immediately."[7]

¶70 I apply this definition to proceedings on a Chapter 980 discharge petition. I begin with the second criterion: Special proceedings result in a final order that can be appealed immediately.

¶71 Proceedings on a Chapter 980 discharge petition easily meet this second criterion. A circuit court's decision granting or denying a Chapter 980 petition for discharge is, by statute, a final order that can be appealed immediately. See Wis. Stat. § 980.095(3) ("Any party may appeal an order under this subsection as a final order under chs. 808 and 809.").

¶72 I now turn to the first criterion in the definition: Special proceedings "can be commenced independently of a pending action."[8]

¶73 There was no pending action when the petitions for discharge were filed in the instant cases. After an individual has been adjudicated a "sexually violent person" and the circuit court has entered a judgment and commitment order, the original

---

[6] Id.

[7] Id.

[8] Id.

Chapter 980 commitment proceedings are at an end.[9]  If the committed person wants to be discharged, the person must file a petition in the committing court.[10]  In other words, the commitment proceedings have ended by the time a petition for discharge is filed.

¶74  I now tackle the phrase "commenced independently."  In the instant cases, this phrase must mean "commenced independently of the original commitment proceedings."

¶75  The majority opinion concludes that proceedings on a Chapter 980 discharge petition are not commenced independently of the original commitment proceedings, but rather are part of the original commitment proceedings.[11]  This is where the majority opinion loses its way.  The majority opinion departs from its definition of "special proceeding" and does not adhere to the cases it cites in support of its position.

---

[9] See Wis. Stat. § 980.05(5) ("If the court or jury determines that the person . . . is a sexually violent person, the court shall enter a judgment on that finding and shall commit the person as provided under s. 980.06. . . ."); Wis. Stat. § 980.06 ("If a court or jury determines that the person who is the subject of a petition under s. 908.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment . . . .").

[10] See Wis. Stat. § 980.09(1) ("A committed person may petition the committing court for discharge at any time.  The court shall deny the petition . . . unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order . . . .").

[11] Majority op., ¶¶26, 31.

4

¶76 The majority opinion cites several Wisconsin cases to provide examples of special proceedings.[12]  These cases do not support the majority opinion's application of the Black's Law Dictionary definition of "special proceeding" to the instant cases.  Rather, the cases cited by the majority opinion support the conclusion that proceedings on a Chapter 980 discharge petition are special proceedings.  See, for example, the following:

- Ernst v. The Steamer "Brooklyn", 24 Wis. 616, 617 (1869), provides three examples of proceedings that are "readily recognized" as special proceedings:  "proceedings to attach for contempt, [proceedings] to obtain discovery of books, [and] proceedings supplementary to an execution." All three of these "readily recognized" special proceedings relate to an underlying action but are nevertheless treated as being commenced independently of any other action or proceeding.

     In a later case, Witter v. Lyon, 34 Wis. 564, 574 (1874), the court reaffirmed the determination in Ernst that a proceeding "to obtain discovery of books" is a special proceeding.  The court expressly rejected the contention that "there can be no special proceeding which grows out of, or is connected with, a pending action."[13]

---

[12] See majority op., ¶29.

[13] Witter v. Lyon, 34 Wis. 564, 574 (1874).

- In <u>Voss v. Stoll</u>, 141 Wis. 267, 271, 124 N.W.2d 89, (1910), the court held that the proceeding required by statute to "revive" a case on behalf of a party who died after the case commenced is classified as a special proceeding. The <u>Voss</u> court stated that "[t]he test to be applied in determining the nature of any judicial remedy, as regards whether it is a special proceeding, is whether it is a mere proceeding in an action, or one independent[] thereof or <u>merely connected therewith</u>."[14]

  Thus, as in <u>Ernst</u> and <u>Witter</u>, the <u>Voss</u> court acknowledged that special proceedings will often be "connected" with another proceeding.

- In <u>Wellens v. Kahl Insurance Agency, Inc.</u>, 145 Wis. 2d 66, 426 N.W.2d 41 (Ct. App. 1988), the court of appeals referred to contempt proceedings as special proceedings, just as this court did in <u>Ernst</u>. A contempt proceeding is one in which a "court of record [] impose[s] a remedial or punitive sanction" for a person's misconduct or disobedience in a court proceeding.[15] A contempt proceeding is therefore factually connected to a prior or pending action but is classified as a special proceeding.

---

[14] <u>Voss v. Stoll</u>, 141 Wis. 267, 271, 124 N.W.2d 89 (1910) (emphasis added).

[15] <u>See</u> Wis. Stat. § 785.02 (regarding the power of the court to punish for contempt of court); <u>see also</u> Wis. Stat. § 785.01 (defining "contempt of court").

6

• In <u>Ryder v. Society Insurance</u>, 211 Wis. 2d 617, 565 N.W.2d 277 (Ct. App. 1997), the court of appeals stated that "[s]pecial proceedings include[] all remedies that [a]re not ordinary actions." Chapter 980 petitions for discharge provide a remedy for institutionalized persons, and as we explain more fully later on, the legislature has established special rules applicable to these proceedings.

The court of appeals in <u>Ryder</u> also stated that matters "incident to an existing action" are not special proceedings.[16] Again, as we explain more fully later on, proceedings on a Chapter 980 discharge petition are, by statute, not incident to the original commitment proceedings. Rather, they are separate and distinct proceedings.

¶77 In sum, the case law demonstrates that proceedings this court has previously classified as special proceedings have a connection with prior or pending actions or proceedings but are nevertheless viewed as independent special proceedings.

¶78 Furthermore, Chapter 980 makes clear that proceedings on a discharge petition are governed by a set of statutory rules and procedures different from (and independent of) those governing Chapter 980 commitment proceedings. Moreover, the two proceedings examine the condition of the person at different times. Thus, although proceedings on a Chapter 980 discharge

---

[16] <u>Ryder v. Society Ins.</u>, 211 Wis. 2d 617, 619, 565 N.W.2d 77 (Ct. App. 1997).

7

petition share a factual history with the original commitment proceedings, they are nevertheless independent of the commitment proceedings.

¶79 The provisions of Chapter 980 relating to the initial commitment proceedings govern notice to the department of justice and district attorney;[17] the contents and filing of a petition alleging that a person is sexually violent;[18] the rights of persons subject to such petitions;[19] examination of the person alleged to be sexually violent;[20] change of the place of jury trial from another county;[21] "discovery and inspection";[22] detention, probable cause hearings, and transfer for examination;[23] the commitment trial;[24] commitment itself;[25] and various other procedural matters.[26]

¶80 In contrast, Wis. Stat. §§ 980.09 and 980.095 govern proceedings on a Chapter 980 discharge petition. These provisions control the filing of a petition for discharge, its

---

[17] Wis. Stat. § 980.015.

[18] Wis. Stat. § 980.02.

[19] Wis. Stat. § 980.03.

[20] Wis. Stat. § 980.031.

[21] Wis. Stat. § 980.034(1).

[22] Wis. Stat. § 980.036.

[23] Wis. Stat. § 980.04.

[24] Wis. Stat. § 980.05.

[25] Wis. Stat. § 980.06.

[26] Wis. Stat § 980.038.

8

contents, the burden of proof, the appropriate methods for demanding and selecting a jury, receipt of a jury verdict and its effect, and the filing of postverdict motions and appeals from orders granting or denying discharge.

¶81 The differences between commitment proceedings and proceedings on a petition for discharge are substantial and significant, demonstrating that proceedings on a discharge petition are separate from and independent of the initial commitment. For example:

- At the commitment proceedings, the State "has the burden of proving beyond a reasonable doubt that the person . . . is [] sexually violent,"[27] and a jury verdict on whether the State has met its burden "is not valid unless it is unanimous."[28] In contrast, at a proceeding on a petition for discharge, the State "has the burden of proving by clear and convincing evidence that the person meets the criteria for commitment as a sexually violent person,"[29] and agreement by just five of the six jurors is sufficient for a verdict.[30]

- The person against whom a petition for involuntary commitment has been filed is automatically entitled to

---

[27] Wis. Stat. § 980.05(3)(a).

[28] Wis. Stat. § 980.03(3).

[29] Wis. Stat. § 980.09(3).

[30] Wis. Stat. § 980.095(1)(c).

a jury trial,[31] while a committed person who files a petition for discharge is entitled to a jury trial only if "the petition alleges facts from which the court or jury may conclude <u>the person's condition has changed</u> since the date of his or her initial commitment order . . . ."[32]

- The focus at the original commitment proceedings is on the person's condition at the time of those proceedings. The focus at discharge proceedings is on the committed person's condition at the time the discharge petition was filed. The circumstances that existed at the time of commitment are no longer dispositive.

- A petition for discharge must allege facts that are <u>new</u> since the commitment order was entered.[33] In other words, the petition must include "something more than facts, professional knowledge, or research that was considered by an expert testifying in a prior proceeding that determined the person to be sexually violent" from which the jury or court could conclude

---

[31] Wis. Stat. § 980.03(3).

[32] Wis. Stat. § 980.09 (emphasis added).

[33] Wis. Stat. § 980.09 (requiring the petitioner to allege "facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment . . . ").

10

that the person no longer meets the criteria for commitment.[34]

¶82 These statutory provisions are persuasive evidence that proceedings on a petition for discharge are separate from and independent of the original commitment proceedings. They persuade me that filing a petition for discharge commences (that is, begins) a special proceeding to which the Daubert standard applies.

¶83 It is a truism that without a Chapter 980 commitment order, there would be no proceedings on a petition for discharge. This connection does not, however, make a petition for discharge or a proceeding on that petition "part of" the initial commitment proceedings. Rather, Chapter 980 demonstrates that the two proceedings share a common factual history but are independent and separate.

¶84 The purpose of the statute adopting the Daubert standard and "the consequences of alternative interpretations" also inform my interpretation.[35] Courts decline to read statutes in a way that produces absurd, implausible, or unreasonable results, or results that are at odds with the legislative purpose.[36] Interpreting Wis. Stat. § 970.02(1) as applying the

---

[34] State v. Combs, 2006 WI App 137, ¶32, 295 Wis. 2d 457, 720 N.W.2d 684; see also State v. Kruse, 2006 WI App 179, ¶35, 296 Wis. 2d 130, 722 N.W.2d 742.

[35] Legue v. City of Racine, 2014 WI 92, ¶61, 357 Wis. 2d 250, 849 N.W.2d 837.

[36] Hubbard v. Messer, 2003 WI 145, ¶9, 267 Wis. 2d 92, 673 N.W.2d 676.

11

Daubert standard to proceedings on a petition for discharge filed after February 1, 2011, avoids an absurd, unreasonable, or implausible result clearly at odds with the legislature's purpose and takes into consideration the consequences of alternative interpretations.

¶85 The legislature adopted the Daubert standard as part of broader tort reform legislation, obviously intending to impose a more stringent standard to the admission of expert testimony in Wisconsin. The legislature did not, however, limit the Daubert standard to tort cases or even to civil cases. The legislature adopted the Daubert standard for all cases, civil and criminal.

¶86 The legislature adopted the Daubert standard to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[37]

¶87 The statute adopting the Daubert standard, Wis. Stat. § 907.02(1), provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.)

---

[37] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) (citations omitted).

12

¶88 The standard for the admissibility of expert testimony that applied when the petitioners were initially committed lacked the reliability requirement set forth in Wis. Stat. § 907.02(1) (underlined above). This pre-Daubert standard provided as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[38]

¶89 As Professor Daniel D. Blinka explains, the Daubert standard adopted by the Wisconsin legislature requires that "[t]he expert's testimony [] be grounded in an accepted body of learning or experience in the expert's field, and [that] the expert [] explain how the conclusion is so grounded."[39]

¶90 When I examine the legislative purpose for adopting the Daubert standard and "the consequences of alternative interpretations" of the Daubert statute, the answer is clear: The Daubert standard applies in the instant cases. It seems to me the legislature would want to have only reliable expert witnesses, whose testimony is grounded in an accepted body of learning or experience in the expert's field, testify on behalf

---

[38] Wis. Stat. § 907.02 (2003-04); Wis. Stat. § 907.02 (2005-06).

[39] Daniel D. Blinka, The Daubert Standard in Wisconsin: A Primer, Wis. Lawyer, Mar. 2011, at 60 (quoting Fed. R. Evid. 702 advisory committee note (2000 amendment)) (first alteration in original).

of either the State or the petitioner in Chapter 980 discharge petition proceedings.

¶91 The proceedings on a petition for discharge result in either the release of a committed sex offender or the continued institutionalization of that offender. A huge liberty interest is at stake in Chapter 980 proceedings. A Chapter 980 commitment is indefinite in duration and is therefore tantamount to a life sentence in a custodial setting. Consequently, Chapter 980 reflects a "delicate balancing of the public safety with individual liberty."[40] Based on the profound importance of the interests at stake, it is only logical that the legislature would seek to ensure the reliability of the expert testimony presented at proceedings on a Chapter 980 petition for discharge.

¶92 Why would the legislature apply the less stringent relevance-based standard rather than the more stringent reliability-based standard at proceedings on a Chapter 980 petition for discharge filed after February 1, 2011? The simple, obvious answer is it would not. To fulfill the purpose of Chapter 980 discharge proceedings, the Daubert standard should be used.

¶93 Furthermore, the majority opinion's interpretation extends the application of the pre-Daubert standard indefinitely. Decades might pass between a commitment order and the filing of a petition for discharge. Why would the

---

[40] State v. West, 2011 WI 83, ¶100, 336 Wis. 2d 578, 800 N.W.2d 929.

14

legislature want to have different evidentiary rules applied for many, many years into the future to persons similarly situated? It would not.

¶94 Under the majority opinion's interpretation, discharge proceedings for a person committed on January 31, 2011, and a person committed on February 1, 2011, are governed by different evidentiary rules. The majority opinion's interpretation creates confusion for committed persons, lawyers, and the courts.

¶95 With these implications of the majority opinion's alternative interpretation in mind, I think it is clear that the legislature would want expert testimony that is reliable under Daubert presented at proceedings held on petitions for discharge filed after February 1, 2011.

¶96 In sum, I conclude that the Daubert standard governs the expert testimony presented at the proceedings on the petitioners' Chapter 980 discharge petitions. The majority opinion's contrary conclusion is unpersuasive.

II

¶97 The petitioners also raise constitutional claims. The constitutional question presented is whether applying the Daubert standard to only those discharge petition proceedings for which the original commitment proceedings commenced on or

15

after February 1, 2011, violates the petitioners' constitutional rights to equal protection and due process of law.[41]

¶98 The majority opinion determines that rational basis review applies to the petitioners' constitutional claims because applying the Daubert standard to proceedings on a discharge petition only when the original commitment proceedings commenced on or after February 1, 2011, neither "implicates a fundamental right nor discriminates against a suspect class."[42] The majority opinion further determines that "the legislature's decision to apply the Daubert [] standard to 'actions' or 'special proceedings' 'commenced' on or after February 1, 2011, satisfies rational basis review and therefore is constitutional."[43]

¶99 Because I conclude that the Daubert standard should have been applied at the proceedings on the petitioners' discharge petitions, I need not reach the constitutional questions presented.

¶100 Nevertheless, I disagree with the majority opinion's conclusion on this point. Even if rational basis review is the appropriate level of scrutiny, which is far from clear (a person

---

[41] Specifically, Alger argues that applying the Daubert standard to only those discharge petition trials for which the original commitment action commenced on or after February 1, 2011, violates his constitutional right to equal protection. Knipfer argues that applying the Daubert standard to only those discharge petition trials for which the original commitment action commenced on or after February 1, 2011, violates his constitutional rights to equal protection and due process.

[42] Majority op., ¶39; see also majority op., ¶42.

[43] Majority op., ¶55.

16

committed under Chapter 980 is detained indefinitely), there appears to be no rational basis for applying the Daubert standard to proceedings on a discharge petition only when the original commitment proceedings commenced on or after February 1, 2011. In my view, the legislative classification produced by the majority opinion's interpretation of 2011 Wis. Act 2, § 45(5) fails to pass constitutional muster.

¶101 For the reasons set forth, I dissent.

¶102 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

17